UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| | * | |
| v. | * | Criminal Action No. 25-cr-10014-ADB |
| | * | |
| | * | |
| JENEL FLOUNOURY and JUSTIN | * | |
| FLOUNOURY, | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

On January 16, 2025, a grand jury returned an indictment against two brothers, Defendants Jenel Flounoury ("Jenel") and Justin Flounoury ("Justin"), charging them with conspiracy to commit larceny from a credit union in violation of 18 U.S.C. § 371 (Count One) and larceny from a credit union in violation of 18 U.S.C. § 2113(b) (Count Two).  [ECF No. 21]. Jenel and Justin are currently scheduled to be tried together beginning on August 3, 2026.  [ECF No. 88].  Each has moved to sever his trial from that of his brother pursuant to Federal Rule of Criminal Procedure 14.  [ECF No. 97]; [ECF No. 98].  For the reasons set forth below, the motions are **GRANTED IN PART** and **DENIED IN PART**.

## I.       BACKGROUND

The indictment in this case alleges that Jenel and Justin conspired to steal money from Energy Credit Union in West Roxbury, Massachusetts, by staging a robbery on September 24, 2024.  [ECF No. 21 ¶¶ 1, 4].  Specifically, it alleges that Justin entered the bank posing as a robber and passed a note to Jenel, who was working at the bank as a teller, demanding money.  [Id. ¶ 6].  Jenel allegedly gave Justin $197,146 in cash from the bank's vault, which Justin took to the brothers' shared residence.  [Id. ¶¶ 7–8].  On the night of the robbery, police executed a search warrant at the brothers' residence, and recovered over $160,000 in cash, including ten $100 bills that were known to have been present in the bank's vault prior to the robbery.  [Id. ¶ 11].  Jenel and Justin do not dispute that Jenel was the bank teller who gave the robber the $197,146 or that money taken from the bank was found in their residence.  [ECF No. 97 at 5]; [ECF No. 98 at 4–5].

On April 10, 2026, Justin filed a motion to sever his trial from Jenel's, arguing that a joint trial would prejudice him because he and Jenel intended to present antagonistic and substantially incompatible defenses.  [ECF No. 97].  That same day, Jenel filed a motion to sever his trial from Justin's, joining the arguments in Justin's motion and arguing that a joint trial would unfairly prejudice him because of the overwhelming amount of evidence against Justin and because his defense was antagonistic to Justin's defense.  [ECF No. 98].  The government opposed both motions on May 6, 2026.  [ECF No. 103].  The Court heard oral argument on the motions on May 19, 2026.  [ECF No. 106].

## II.      DISCUSSION

Federal Rule of Criminal Procedure 8(b) provides that an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the

same series of acts or transactions, constituting an offense or offenses."  "The general rule is that defendants who are properly joined in an indictment should be tried together."  United States v. Floyd, 740 F.3d 22, 36 (1st Cir. 2014) (citing United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993)); see also Zafiro v. United States, 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together."); United States v. Soto-Beníquez, 356 F.3d 1, 29 (1st Cir. 2003) (noting that "the general rule . . . prevent[s] inconsistent verdicts and . . . conserve[s] judicial and prosecutorial resources" (citing O'Bryant, 998 F.2d at 25)).  "This rule has special force in conspiracy cases, in which the severance of coconspirators' trials 'will rarely, if ever, be required.'"  Floyd, 740 F.3d at 36 (quoting United States v. Flores-Rivera, 56 F.3d 319, 325 (1st Cir. 1995)); see also United States v. Simon, 12 F.4th 1, 45 (1st Cir. 2021) ("When . . . an indictment charges a criminal conspiracy among multiple defendants, the government enjoys the benefit of a rebuttable presumption that a joint trial is appropriate.").

Pursuant to Federal Rule of Criminal Procedure 14(a), courts "may order separate trials of counts" or "sever the defendants' trials" if a consolidated trial "appears to prejudice a defendant or the government."  "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 539.  A defendant is not automatically entitled to a severance simply because the defendants present "[m]utually antagonistic defenses."  Id. at 538.  Rather, "to gain a severance based on antagonistic defenses, the antagonism . . . must be such that if the jury believes one defendant, it is compelled to convict the other defendant."  Floyd, 740 F.3d at 36 (quoting United States v. Peña-Lora, 225

3

F.3d 17, 33 (1st Cir. 2000)); see also United States v. Tiem Trinh, 665 F.3d 1, 18 (1st Cir. 2011) ("[T]o obtain severance on the grounds of conflicting defenses, a defendant has to demonstrate that the defenses are so irreconcilable as to involve fundamental disagreement over core and basic facts." (quoting United States v. Paradis, 802 F.2d 553, 561 (1st Cir.1986))). "[F]inger pointing . . . is not enough to taint a trial." United States v. Ayala-Lopez, 493 F. App'x 120, 124 (1st Cir. 2012); see also Peña-Lora, 225 F.3d at 33 ("[M]ere fingerpointing among codefendants—i.e., the familiar 'he did it, not I' defense—normally is not a sufficient ground for severance."); United States v. Chisholm, 940 F.3d 119, 127 (1st Cir. 2019) ("[F]inger-pointing among the defendants . . . is not only acceptable but also a benefit of a joint trial, for it helps the jury to assess the role of each defendant." (quoting United States v. Hoover, 246 F.3d 1054, 1061 (7th Cir. 2001))). Rather, the proffered defenses must be "truly irreconcilable, or at least substantially incompatible" to justify severance. United States v. DeCologero, 530 F.3d 36, 52 (1st Cir. 2008).

Here, Justin and Jenel both argue that severance is required because they intend to present mutually antagonistic defenses. [ECF No. 97 at 5–8]; [ECF No. 98 at 5–6]. Perhaps unsurprisingly, both Jenel, the teller, and Justin, the alleged "robber," deny any involvement in the robbery. [ECF No. 97 at 5]; [ECF No. 98 at 6]. Justin argues that his "best defense is that Jenel . . . orchestrated and participated in the theft with a third-party who acted as the robber." [ECF No. 97 at 6]. Jenel, by contrast, argues that his "defense will be that Justin was the robber who planned and executed the robbery and walked away with the proceeds, taking advantage of Jenel's unawareness of Justin's plan." [ECF No. 98 at 6].

In the Court's view, although the issue is close, under the unusual circumstances of this case, the defendants' anticipated defenses are sufficiently antagonistic to require severance on

4

Count Two of the indictment, which charges each brother with larceny from a credit union. Simply put, the undisputed fact that the money from the bank was found at the brothers' house strongly suggests that at least one of the brothers is guilty of the charged offense. Thus, to secure an acquittal, each brother must effectively convince the jury that the other brother is guilty. In sum, this is the rare case in which severance is warranted because "[i]f the jury believes" one brother, it will be practically "compelled to convict the other," Floyd, 740 F.3d at 36 (quoting Peña-Lora, 225 F.3d at 33).

The government characterizes the defendants' arguments for severance as mere finger pointing. [ECF No. 103 at 8–11]. In the government's view, the defendants' problem is not the irreconcilability of their defenses, but, rather, "the strength of the government's case," which it contends "may make unbelievable the arguments each defense counsel wishes to pursue." [Id. at 10]. The government also faults the defendants for failing to "identif[y] any argument they intend to advance that does not merely echo facts already present in the government's case in chief," noting that the defendants largely agree "as to the core facts established by the government's case." [Id.].

The government is correct that, when a defendant challenges the denial of a mistrial motion during or after trial, what matters is generally "the evidence actually introduced at trial," not "argument by counsel." Chisholm, 940 F.3d at 128 (quoting United States v. Rose, 104 F.3d 1408, 1416 (1st Cir. 1997)); see also Tiem Trinh, 665 F.3d at 18 (noting that "argumentation by counsel rarely is sufficient for establishing a 'truly prejudicial antagonistic defense'" (quoting Peña-Lora, 225 F.3d at 34 n.14)). On a pretrial motion for severance, however, the inquiry is, by necessity, a different one: that is, whether there is a "risk of potential prejudice" based on the anticipated evidence and defenses, not whether the evidence at trial has caused "actual

5

prejudice." United States v. Brown, 16 F.3d 423, 432 (D.C. Cir. 1994).  Here, the Court is persuaded, at least with regard to the substantive count, that the evidence and defenses that may be presented at trial create such a risk.  The defendants disagree over the "core and basic fact[]," Tiem Trinh, 665 F.3d at 18 (quoting Paradis, 802 F.2d at 561), of who the robber was—Justin or a third party working with Jenel.  Although it may be theoretically possible for the jury to acquit both brothers if it concludes that the government has failed to prove its case against either brother beyond a reasonable doubt, [ECF No. 103 at 10], this is not the defense that either brother states he currently intends to present.  Based on the anticipated evidence and anticipated defenses in this case, the Court concludes that the defenses are at least substantially incompatible, and a consolidated trial on the substantive count might put a thumb on the scale in favor of the government, by forcing each defendant to "fac[e] . . . two prosecutors—the government and his codefendant." United States v. Sherlock, 962 F.2d 1349, 1363 (9th Cir. 1989).  Although "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials," Zafiro, 506 U.S. at 540, the circumstances in this unusual case require severance, at least on the substantive count, so that the jury can "assess the guilt or innocence of the defendants on an individual and independent basis," United States v. Buena-Lopez, 987 F.2d 657, 661 (9th Cir. 1993) (quoting United States v. Tootick, 952 F.2d 1078, 1083 (9th Cir. 1991)).  Accordingly, the Court will sever the defendants' trials on Count Two of the indictment.

Severance is not required, however, on Count One of the indictment, which charges the brothers with conspiracy to commit larceny from a credit union.  On that charge, the defendants' anticipated defenses are, as the government points out, [ECF No. 103 at 11 n.6], complementary, not antagonistic.  Each brother can argue that he was not involved in the charged conspiracy (and

6

even that his brother robbed the bank, alone or working with a third party)—and, if the jury believes either brother, it must acquit them both.  See, e.g., United States v. Dellosantos, 649 F.3d 109, 115 (1st Cir. 2011) ("The agreement is the sine qua non of a conspiracy, and this 'element is not supplied by mere knowledge of an illegal activity . . . , let alone by mere association with other conspirators or mere presence at the scene of the conspiratorial deeds.'" (quoting United States v. Zafiro, 945 F.2d 881, 888 (7th Cir. 1991))).  Moreover, the risk of spillover prejudice, which Jenel raises as a concern in his motion, [ECF No. 98 at 3–5], is greatly reduced in conspiracy cases, which "often involve evidence that is admissible against all members of the conspiracy," Soto-Beníquez, 356 F.3d at 29, and can in any case be alleviated through limiting instructions.  Thus, at least with respect to the conspiracy charge, the defendants have not rebutted the "presumption that a joint trial is appropriate."  Simon, 12 F.4th at 45.  Accordingly, the Court will not require government to try the defendants separately on Count One of the indictment.

## III.    CONCLUSION

For the foregoing reasons, Justin and Jenel's motions to sever, [ECF No. 97]; [ECF No. 98], are **GRANTED IN PART** and **DENIED IN PART**.  The government may try the defendants jointly on Count One of the indictment, but must try the defendants separately on Count Two of the indictment.  As previously discussed with the parties, trial on the conspiracy count will begin on August 3, 2026.

**SO ORDERED.**

June 15, 2026                                                              /s/ Allison D. Burroughs
                                                                          ALLISON D. BURROUGHS
                                                                          U.S. DISTRICT JUDGE

7